THE STATE v. BABER, *Appellant.*

1. **Practice, Criminal**: USE OF LIQUOR BY THE JURY. A verdict will not be set aside because the jury used intoxicating liquor in their retirement, unless it was supplied from an improper source or affected the verdict. Following *State v. Upton*, 20 Mo. 397.

2. ———: JURY VISITING THE JAIL. It is an act of indiscretion on the part of a jury to visit the jail where a prisoner on trial before them is confined; but in the absence of evidence that they communicated with any one or that any improper influence was brought to bear upon them while there, the verdict will not be set aside for that reason.

3. ———: VERDICT: WEIGHT OF EVIDENCE. This court will not interfere with a verdict, even in a criminal case, on the ground that it is against the evidence, unless there is a total absence of evidence or the evidence so completely fails to support the verdict that the necessary inference is, that the jury acted from prejudice or partiality. Following *State v. Cook*, 58 Mo. 548.

4. ———: COMPETENCY OF JUROR. A juror, upon his *voir dire* stated that he had some prejudice against the defense of insanity (the defense set up in this case), but that this prejudice would not affect him in the slightest degree in the trial of the case; also that he would hang a crazy man, but that his sympathies would be on the side of such a person. *Held*, that he was not disqualified to sit in the case.

5. ———: DISCHARGE OF JUROR. One A. having been examined on his *voir dire* was found qualified and accepted on the panel of forty from which a jury of twelve was to be selected, but before the panel was completed he was taken sick, and the court discharged him for that

reason. His place was supplied by another qualified juror, before the defendant was called upon to make his peremptory challenges. *Held*, no error; especially as it appeared that one of defendant's counsel consented to the discharge.

6. ——: HYPOTHETICAL CASE. A hypothetical case put by the State to expert witnesses on the subject of insanity being objected to on the ground that it did not correctly embody the facts in evidence on that subject; *Held*, that in point of fact the objection was not well taken.

7. ——. Remarks made by the prosecuting attorney in his closing speech to the jury; *Held*, not to be such as to authorize the court to interfere with the verdict.

*Appeal from St. Louis Court of Appeals.*

AFFIRMED.

*A. N. Merrick* and *C. O. Bishop* for appellant.

*D. H. McIntyre,* Attorney General, for the State.

NORTON, J.—Defendant was indicted in the St. Louis criminal court for the crime of murder in the first degree, in killing Frederika Schuendler, on the 14th day of August, 1879. He was tried and convicted of the offense charged, and on his appeal to the St. Louis court of appeals, the judgment was by that court affirmed, from which he appeals to this court.

The following is a brief summary of the facts relating to the homicide as shown by the evidence. Defendant went to the house of the deceased between seven and eight o'clock of the night of the 14th of August, 1879, inquired of deceased for her daughter, Lizzie, who had previously been living with him as his mistress, and who but a few days before had retured to her mother's home, and not receiving a reply, shot her, while sitting in a chair, in the back of the head, where she was found dead immediately after the shooting occurred. Defendant was seen running from the scene of the homicide, was overtaken and arrested.

In many of the points involved in defendant's appeal,

the case is on all fours with the case of the *State v. Erb*, *ante*, p. 199. Insanity was relied on as a defense in this case as it was in that; the court gave the same instructions touching that defense in this case as it did in that; the court also instructed the jury in this case, as it did in that, that the burden of proving insanity rested on the defendant, and that before they could acquit on that ground the insanity of defendant must be established by the evidence to their reasonable satisfaction; that to establish the fact of insanity positive and direct proof was not required, but that circumstantial evidence which reasonably satisfied their minds was sufficient. Similar instructions in regard to insanity were asked by defendant and refused by the court in this case, as in that; the same objections were made to the instruction defining deliberation in this case as in that. All the above points were passed upon by this court in the *Erb case*, and it was held that no reversible error had been committed by the trial court, and that case is conclusive of this as to all the points above adverted to. Our attention has been called to other matters of alleged error not involved in the case of the *State v. Erb*, which I will procede to notice.

It is insisted that the court erred in refusing to grant a new trial because of alleged misconduct of the jury in the use of intoxicating liquors, and their being allowed to go into and through the jail in which persons criminally charged were confined.

The deputy sheriff who had the jury in charge stated in his affidavit " that when they were taken to their meals 1. PRACTICE, CRIM-some of the jurors asked if they could take INAL; use of liquor by the jury. a drink before eating; that he replied that they could if they did not take too many; that some of them took whisky; some beer; but no juror took more than one drink at their meals; that in the evening after supper one or two of the jurors took with them each a pint bottle of whisky, for medical purposes more than anything else; that it was utterly false that any of the jury

drank to excess during the entire time he had them in charge; that the whole amount of whisky used by them in the two days he had them in charge was three or four pints." Mr. Hodnett, the sheriff, in his affidavit stated "that he never saw any juror take more than one drink at breakfast each day, and one drink at night before retiring, and that no juror manifested the least sign of intoxication, nor did any outsider furnish any liquor to any juror." While cases may be found among the authorities from other states, to which counsel have cited us, which would have justified the trial court in granting a new trial because of any use, except medicinally, by a juror, of intoxicating liquors, a different, and I think a more reasonable rule obtains in this State, as will be seen by reference to the case of *State v. Upton*, 20 Mo. 397, where it was held that a verdict will not be set aside because the jury used intoxicating liquor in their retirement, unless it appears that it was supplied from an improper source or affected the verdict, Judge Scott observing that "we have never lent a willing ear to objections against verdicts growing out of irregularities in the conduct of jurors, unless such irregularities affected the verdict or were induced by the party obtaining it. Whilst the conduct of jurors cannot be too narrowly watched by the courts, yet if they do misbehave, if it cannot be seen that such misbehavior affected the verdict, it has been thought best to leave such misbehavior to the reprehension of the courts and to the punishment imposed by law for it, without disturbing the verdict. No court would be warranted in receiving a verdict against a prisoner from a jury, any member of which was in the least under the influence of intoxicating liquors. But to hold that a verdict should be set aside for the use of ardent spirits by the jury, not carried to an excess, when such spirits are not supplied from a source interested, or calculated to bias the minds of jurors, would be establishing a rule which would result in no practical good, and prove very burdensome to the parties." The doctrine an-

nounced in the above case was reiterated and approved in the case of the *State v. West*, 69 Mo. 401. Applying the principle of these cases to the facts in this case relating to the use of liquors by the jury, the action of the court in refusing to disturb the verdict on that ground is sustained.

Nor do I think that the mere fact that the jury went through the jail on Sunday morning, while it was an act of indiscretion on their part, was sufficient to authorize setting aside the verdict, it not appearing that they talked with any person while there about the case; or that any person talked with them or in their hearing about it; or that any improper influence whatever was brought to bear upon them. On the contrary, it affirmatively appears from the affidavit of Mr. Ryan, who had the jury in charge, that they were kept together in a body while going through the jail, and that nothing whatever was said by them or any one else relating to the case of defendant.

*2. ———: jury visiting the jail.*

It is also insisted that the evidence clearly established the insanity of defendant, and for that reason the verdict should have been set aside and a new trial granted. There was evidence on both sides of that issue conflicting in its character, and the question having been fairly submitted to the jury in appropriate instructions, under the rule laid down in the cases of *State v. Cook*, 58 Mo. 548, and *State v. Musick*, 71 Mo. 401, we cannot interfere with the verdict, it having been held in those cases "that it is only when there is a total absence of evidence, or it so completely fails to support the verdict, that the necessary inference is that the jury must have acted from prejudice or partiality, that we will attempt to relieve, for the reason that the evidence did not warrant the verdict, even in a criminal case."

*3. ———: verdict: weight of evidence.*

It is also insisted that error was committed by the trial court in accepting on the panel of forty jurors, three persons as qualified jurors, who, after stating that they had some prejudice against the de-

*4. ———: competency of juror.*

fense of insanity, said in response to an interrogation by the court that such prejudice would not affect them in the slightest in the trial of the cause. The only one of the three who sat upon the jury which tried the cause said further, that he would hang a crazy man, but that his sympathies would be on his side. Under the rule laid down in the case of *State v. Walton, ante*, p. 270, the action of the court in accepting said jurors was not improper.

It also appears that one Niehaus, who had been examined on his *voir dire* touching his qualifications as a juror, 5. ———: discharge was accepted on the panel from which a jury of juror. of twelve to try the cause was to be selected. The court not being able to complete said panel on that day adjourned till the next day. In the meantime said Niehaus had been taken sick, and when the work of completing the panel was resumed on the next day the court announced the fact of the sickness of said juror and discharged him for that reason. There was no error in this, as it appears that the place of said Niehaus on the panel was supplied by another juror, and that the panel of forty qualified jurors was full and complete before defendant was compelled to make his peremptory challenges; and as it further appears from the statement of the judge of the court, contained in the bill of exceptions, that one of defendant's counsel consented to such discharge.

It is also insisted that the court erred in overruling defendant's objection to the hypothetical case put by the 6. ———: hypo- State to expert witnesses on the subject of thetical case. insanity. We have carefully examined the facts assumed in the hypothetical case, and are of the opinion that it embodies substantially the facts relating to that subject as disclosed by the evidence. While it is perhaps subject to some verbal criticism it was substantially based on the facts in evidence, and we cannot, therefore, say that the court erred, to the prejudice of the accused, in overruling the objection, especially when it is considered that the duty of determining whether the facts assumed in the

hopothetical case put by the State as well as in that put by defendant had or not been proved, rested with the jury.

We are also urged to reverse the judgment because of certain remarks made by the prosecuting attorney in his 7. ——.    closing speech to the jury. Upon an examination of what was said by him, as testified to by Mr. Robinson, a stenographic reporter, we perceive no misstatement of either law or fact, and cannot interfere with the verdict simply upon the ground that his language was highly figurative and earnest.

Finding no error either in the action of the court touching the questions discussed or in the reception or rejection of evidence, or in reference to charging the jury at each adjournment of the court, the judgment, with the concurrence of the other judges, will be, and is hereby affirmed.