The State v. Hayes.

THE STATE v. HAYES, *Appellant.*

| | |
|---|---|
| 78 | 307 |
| 99 | 674 |
| 78 | 307 |
| 118 | 651 |
| 119 | 550 |
| 78 | 307 |
| 92a | 7 98 |
| 78 | 307 |
| 171 | ²404 |

1. **Arson**: INDICTMENT. An indictment for an attempt to commit arson may properly combine in one count what the defendant did, himself, and that which he solicited another to do in making the same attempt.

2. ――――: ――――. An indictment for an attempt to commit arson is not bad because it alleges that the defendant is the owner of the house; arson being defined by statute to be the burning of any dwelling house in which there is at the time some human being.

3. **Jurors**: HAVING AN OPINION. A juror said before the trial, that, if defendant was guilty, he ought to be sent up for a year or so. *Held,* not to be an expression of opinion as to defendant's guilt, and standing alone, no ground of challenge for cause: but the attending circumstances, the tone and spirit in which it was said, etc., might make it ground.

4. **Verdict**: OATH OF OFFICER IN CHARGE OF JURY. Although the sheriff was not sworn to keep the jury in some private room and to hold none but the authorized communications with them, as required by the statute, (R. S. 1879, § 1910,) until one and a half hours after their retirement; *Held,* that their verdict was not vitiated thereby, as it also appeared that they retired to "the jury room,"· and that he was sworn before holding any communication with them and before their verdict was rendered, and that it could not have been affected by any outside influence occasioned by the failure to take the oath.

5. **Soliciting Another to Commit Crime.** The soliciting of another to commit crime is an act toward its commission, although the person solicited does not yield to nor act upon the solicitation.

6. **Attempt to Commit Crime**: LOCUS PENITENTIAE. Defendant having made preparations for burning a building, left his supposed accomplice at the building, saying he would go and get some matches, but did not return, and an hour or so afterward was arrested; *Held,* that his failure to return was not proof that he had abandoned his purpose. Anywhere between the conception of the intent and the overt act toward its commission there is room for penitence, and the law in its beneficence extends the hand of forgiveness. But when the evil intent is supplemented by the requisite act toward its commission, the offense is complete.

7. **Judicial Notice**: COAL-OIL. It is not necessary to aver in an indictment nor to prove at the trial, that coal-oil is inflammable.

8. ――――: EVIDENCE: ADMISSIONS. An affidavit by defendant for a continuance in a criminal case is competent evidence against him of his admissions therein contained, but the State by using the same for such purpose does not concede the truth of the whole affidavit.

*Appeal from Greene Circuit Court.*—HON. W. F. GEIGER, Judge.

AFFIRMED.

*Patterson & Barker* and *Heffernan* for appellant.

*D. H. McIntyre*, Attorney General, for the State.

PHILIPS, C.—The appellant, the defendant below, was indicted and convicted in the Greene circuit court for an attempt to commit arson. The indictment in effect charged that, at Greene county, January 5th 1877, the defendant attempted to fire and burn a dwelling house owned by himself, then occupied by human beings, certain persons named. The indictment with much particularity detailed how, toward the commission of the act, the defendant put and spread coal-oil on the floor of said house, preparatory to his meditated offense, " the said coal-oil being then and there an inflammable oil," with the intent to set fire to said coal-oil, and thereby to set fire to and burn the house; and did then and there solicit, incite, etc., one John McMahan to fire and burn said house; and thereto delivered to said McMahan a can of coal-oil, the same being inflammable, etc., " and a bunch of friction matches, with the purpose and intention," on defendant's part, of having said McMahan throw and pour said coal-oil on said house, and set fire thereto and thereby burn the house—and solicited and incited and commanded said McMahan by means thereof to so fire and burn the same " with the intent then and there, on the part of him, the said Michael Hayes, by means of each and every of the acts aforesaid, so as aforesaid done by him, to then and there unlawfully, maliciously and feloniously commit and perpetrate the arson and crime aforesaid, and that he, the said Michael Hayes, failed in the perpetration of said crime."

There was evidence tending to show preparation by

the use of coal-oil as charged. It seems that the man Mc-Mahan had advised the police of the city of Springfield, where the house was located, of Hayes' designs and solicitations to him to commit the act; and on the evening when it was proposed to execute it, he and defendant were to meet in a certain out-house where the policemen concealed themselves. McMahan and defendant did so meet, and the concealed policemen overheard the conversation between the plotters evidencing the scheme as alleged. The coal-oil can was there, and on McMahan's suggesting that he had no matches, defendant said he would go and get some. He left, but failed to return, but did go to a designated house where he said he would be when the house should be fired, and where the officers that night arrested him.

The court gave the following instructions on behalf of the State:

1. If you find from the evidence that the defendant, Michael Hayes, did, at Greene county, State of Missouri, at any time within three years next before the finding of the indictment in this case, willfully, maliciously and feloniously attempt to set fire to and burn a dwelling house situate in Greene county, (then occupied by the families of F. W. Steffen and V. C. Smith,) and in which said dwelling house there was any human being at the time of such attempt, and that defendant did any act or acts toward the commission of said offense, but failed in the perpetration of said offense, then you will find defendant guilty in manner and form as charged in the indictment, and will assess his punishment at imprisonment in the State penitentiary for any period not less than two years, and for as long a time as you may deem it proper to impose.

2. You are instructed that acts on the part of defendant, to constitute an attempt in this case, must be shown by the evidence to be acts suited and adapted to carry into execution the design and attempt charged in the indictment. But if you find from the evidence that defendant hired, incited or commanded one John McMahan to burn said dwell-

ing house, and furnished said McMahan with coal-oil for the purpose of burning said house, and gave said McMahan directions how to do such burning, and that defendant at that time intended that said McMahan should set fire to and burn the dwelling house, then and in that case defendant is guilty of an attempt to burn the dwelling house ; and if you further find from the evidence that at the time of such attempt any human being was in said dwelling house, you will find defendant guilty as charged in the indictment.

3. If you believe from the evidence that defendant offered McMahan money, and solicited, incited or commanded him to burn the dwelling house, with the intent on the part of said defendant at that time that McMahan should proceed to set fire to and burn the house, and did any act in furtherance of the design, then it can make no difference in arriving at your verdict whether McMahan actually intended to burn the house or not.

5. If the jury believe that defendant, after he was charged with the crime alleged in the indictment, fled from justice, or while under recognizance forfeited the same on account of said charge, such conduct on the part of defendant is evidence to be considered by the jury in determining his guilt or innocence.

7. In determining the guilt or innocence of defendant, you should take into consideration all the facts and circumstances in evidence, the acts, conduct and declarations of defendant, and the motive, if any, he may have had to do, or not to do, the offense charged, as shown by the evidence, and if you find from all the facts and circumstances in evidence that there is no other reasonable conclusion from them than that of the guilt of defendant, you will find him guilty as charged in the indictment.

The court refused the following instructions asked by the defendant :

8. In order to commit an attempt to burn a building through the agency of another, defendant must not only have solicited the man McMahan to do so, but he must

have furnished McMahan with something calculated to accomplish the burning, and although the jury may believe defendant furnished McMahan with a can of oil, unless it appears from the evidence that the oil was inflammable and calculated to assist in firing the building, the jury must acquit; and the jury are not permitted to presume the oil was inflammable and calculated to facilitate the firing of the building.

10. There is a distinction between civil and criminal cases in respect to the degree or quality of the evidence necessary to justify the jury in finding their verdict for the State. In civil cases it is the duty of the jury to weigh the evidence carefully and find for the party in whose favor the evidence preponderates, although it be not free from reasonable doubt; but in criminal trials the party indicted is entitled to the legal presumption in favor of his innocence, and his guilt must be proven, not by a mere preponderance or weight of evidence, as in civil cases, but his guilt must be shown beyond a reasonable doubt.

11. Defendant cannot be found guilty unless you shall be satisfied from the evidence beyond a reasonable doubt that he, himself, attempted to set fire to the house in the indictment mentioned, or that he employed or induced McMahan to set fire to the house, and that McMahan agreed to and intended to set the house on fire, and that he would have done so, had he not been prevented or intercepted in the execution of such intention and design, and that he did some act toward the same beyond a mere preparation. The evidence must be such as to exclude every reasonable theory but of defendant's guilt, and the facts proven must be consistent with and point to defendant's guilt, and must be inconsistent with his innocence.

12. There is no evidence to show that the defendant himself attempted to set fire to the house in the indictment mentioned.

13. Even though you shall find that defendant set his coal-oil can, which did leak, near the door of the store or

dwelling house in the indictment mentioned, and that he got a can of oil and took the same to a stable on an alley, and then gave it to one McMahan with directions for said McMahan to throw the same against the said house and to set it on fire, and the said McMahan did agree to do so; such acts, if you find them to be true, do not constitute an attempt on the part of the defendant himself to set fire to the building in the indictment mentioned.

14. Even though you should find from the evidence that defendant did employ or induce one John McMahan to set fire to the house in the indictment mentioned, that fact or facts, (should you find such to be true,) is not sufficient of itself to find defendant guilty, but you will have to further find that said McMahan did agree and intend to set fire to the house in the indictment mentioned, and would have done so, had he not been prevented or intercepted in the execution of such intention and design.

15. Before you can find the defendant guilty, you must find from the evidence either of the following facts to be true beyond a reasonable doubt: First, that defendant did himself attempt to set fire to the house in the indictment mentioned, and in such attempt, (if you find he made such,) did some act toward the commission of such offense beyond a mere preparation, and was prevented or intercepted in the execution of the same; or, secondly, that defendant employed or induced McMahan to set fire to the house, and that McMahan did agree to set the house on fire, and that he, said McMahan, intended to fire the house and did some act beyond a mere preparation, and that he would have done so if he had not been prevented or intercepted. Unless you so find, you will find defendant not guilty.

16. The court instructs the jury that under the evidence the State has failed to make a case, and you will return a verdict of not guilty.

I. The first question for our determination is the sufficiency of the indictment. The defendant claims that it

The State v. Hayes.

1. ARSON: indictment. contained two alleged attempts, one in which he alone participated, the other in which he attempted to incite McMahan to the act, and, therefore, the State should have submitted to his motion for an election. We do not think the objection well taken. The statute, (Gen. St., § 1, ch. 207,) provides that: "Every person who shall attempt to commit an offense prohibited by law, and in such attempt shall do any act toward the commission of such offense," etc. The acts charged were but so many preparatory acts, means and agencies employed and sought to be used by the defendant, looking to the one end in view, the burning of the house. Because he procured the coal-oil, or used part of it at the point for the application of the contemplated match, and then sought to employ a supple agent to spread more oil and apply the torch, did not any more constitute distinct offenses than the murderer who twice shoots his victim and then hacks his body. *Commonwealth v. Stafford*, 12 Cush. 619 ; *People v. Davis*, 56 N. Y. 100, 101 ; *State v. Patterson*, 73 Mo. 699. The matters alleged were but the acts done " toward the commission of the offense."

II. The indictment is not bad for charging the ownership of the house in the defendant. It distinctly charges 2. —— : ——. that the house at the time was occupied by certain families named, human beings, other than the defendant. The statute, (Gen. St., § 1, p. 783,) denounces the act of burning " any dwelling house, in which there shall be at the time some human being." It was not even necessary to name the person occupying the house. *State v. Aguila*, 14 Mo. 130.

III. It is claimed that H. C. Jones, one of the trial jurors, was disqualified. He answered satisfactorily the 3. JURORS: having an opinion. usual questions on the *voir dire* examination. But defendant claims he had in fact expressed an opinion adverse and unfriendly to him, prior to his acceptance as a juryman, which fact was not discovered until after the trial. The proof of this is the affidavit

of one Henry Eaton, who says that a day or two before the trial Jones stated " that if Michael Hayes was guilty he ought to be sent up a year or so." This can hardly be said to be an expression of opinion as to defendant's guilt. It was only the language of any good citizen, that if the man was guilty he ought to be punished. There is scarcely a trial for murder in the first degree in which jurors on their *voir dire* examination, as to whether or not they have conscientious scruples in finding a verdict of guilty where life may be the penalty, who do not answer that, if the man is guilty he ought to be hung. This is no ground of challenge for cause. Much would depend on the attending circumstances of such a remark; as to the whole conversation, what called it out, as well as the tone and spirit of its utterance. But standing alone, as it does in Eaton's affidavit, it furnished no sufficient ground for a new trial. *State v. Baber*, 74 Mo. 292; *State v. Walton*, 74 Mo. 270.

IV. It is assigned for error that the sheriff was not sworn to keep the jury " together in some private or con-

4. VERDICT: oath of officer in charge of jury.

venient room or place, and not permit any person to speak or communicate with them nor do so himself, unless by order of the court, and to ask them whether they have agreed upon their verdict," as provided in section 1910, Revised Statutes. The bill of exceptions shows that " the jurors retired to consider of their verdict, to the jury room, and were there one and one-half hours before the sheriff was sworn, but he was sworn before he had any communication with the jury, and before the verdict was rendered." The section of the statute in question was .designed to secure the jury against any outside influence, and even that of conversation with the officer in charge. And in a case where this precautionary oath is not administered, the court ought to be well satisfied that no harm resulted therefrom to the prisoner. In the case at bar it does affirmatively appear that, at the conclusion of the argument, " the jurors retired to consider of their verdict to the jury room." This presumably was the proper

place assigned for their retirement. It also affirmatively
appears that the officer " was sworn before he had any com-
munication with the jury, and before the verdict was ren-
dered." So there is nothing to give color to any possible
external influence upon the jury, either from access to or
from any outside person, or word or sign from the sheriff prior
to the injunction placed upon him by the cumulative oath.

In *State v. Upton*, 20 Mo. 397, the rule was established
by this court that unless it appeared or could be reasonably
inferred that the irregularity in some way affected the ver-
dict of the jury, it was no ground for new trial. There the
jury used intoxicating liquor in their retirement. It was
held that as it did not appear that it was used to excess,
nor supplied from an interested source, it did not vitiate
the verdict. This was followed in *State v. West*, 69 Mo. 401,
and in *State v. Baber, supra*. In this last case the jury left
their room and went through the jail on Sunday. This
was reprehensible conduct; but as it did not appear that
any person talked to them, or that any improper influence
was brought to bear on them, it was held to be insufficient
to entitle the defendant to a *venire de novo*. See also *State
v. Hart*, 66 Mo. 208, and *State v. Clifton*, 73 Mo. 430. This
laxity of conduct in important State trials, should be dis-
couraged and most rigidly scrutinized by the courts; and
where there exists any just ground of apprehension of
undue exposure or influence, the rule of safety and human-
ity would require a new hearing.

V. The principal question raised by defendant on the
instructions is as to the second and third given for the
5. SOLICITING AN- State, and the refusal of numbers eleven
OTHER TO COMMIT
CRIME. and fourteen, asked by defendant. The
point made is, that unless McMahan, himself, intended to
commit the arson, the defendant could not be held to have
done an act toward the commission of the offense in at-
tempting to procure him to so do. There are some English
cases, such as the *Queen v. Williams*, 1 Den. (Brit. Cr. Cases)
39, and *Rex v. Carr*, Russ. & Ry. 377, which, from their *syl-*

*labi*, give color to this proposition. But it is apparent on examination that these decisions rest on the phraseology of the local statutes. They cannot control the plain letter and meaning of our statute: "Every person who shall attempt to commit an offense, and shall do any act toward the commission of such offense, but shall fail in the perpetration thereof," etc. It is the recognized law of this country that the solicitation of another to commit a crime is an act toward the commission. 1 Bishop Crim. Law, § 767. The evil intent which imparts to the act its criminality, must exist in the mind of the procurer. And how the fact that the party solicited does not acquiesce or share in the wicked intent, exonerates the solicitor, baffles reason.

In *Commonwealth v. Jacobs*, 9 Allen 274, it was held that an indictment might be sustained for soliciting a person to leave the commonwealth for enlisting elsewhere in the military service, although such person was not fit to become a soldier. Gray, J., said: "Whenever the law makes one step toward the accomplishment of an unlawful object with the intent or purpose of accomplishing it, criminal, a person taking the step, with that intent or purpose, and himself capable of doing every act on his part to accomplish that object, cannot protect himself from responsibility by showing that by reason of some act unknown to him at the time of his criminal attempt, it could not be carried into effect in the particular instance."

This section of our statute was copied from the New York statute. In *People v. Bush*, 4 Hill 133, a case on all fours with the one under review, where the prisoner solicited one K. to set fire to a barn, and gave him materials for the purpose, it was held sufficient under an indictment on this statute, to warrant a conviction, though the prisoner did not mean to be present at the commission of the offense, and K. never intended to commit it. *Semble*, that "merely soliciting one to commit a felony, without any other act being done, is sufficient to warrant a conviction." The state of Georgia has a statute taken from that of New

York. In *Griffin v. State*, 26 Ga. 493, this case in 4th Hill is approved. The prisoner intended to commit larceny by abstracting goods from a store house. He obtained therefor an impression of a key to the door, and arranged with one Jones to effect the entrance and abstract the goods. The court says: " The word 'attempt' ordinarily implies an act, an effort, but this statute uses it as synonymous with 'intent,' for it declares that if a person shall attempt to commit a crime and in such attempt shall do any act toward the commission." It was held that the taking of the impression of the key was " alone sufficient to subject him to the law," and the fact that he intended to accomplish the larceny through Jones made no difference. Jones' intent had nothing to do with the offense of Griffin. *King v. Higgins*, 2 East 5.

The evidence tended to show the preparation by Hayes of the means of arson, the coal-oil, spreading it on the floor, meeting McMahan, soliciting, trying to hire and persuade him, and instructing him how to complete the act up to the very evening of its intended consummation. If believed by the jury as detailed by the witnesses, it made out the offense under the statute and sustained the indictment.

VI. Counsel suggest with ingenuity that the defendant should be accorded his *locus penitentiae*. This, for the 6. ATTEMPT TO COMMIT CRIME: locus penitentiae. reason that on the final interview between him and McMahan when, apparently, all that remained to give the building to the flames was a match, he seemingly went off to get one, but did not return. In an hour or so afterward he was arrested. Counsel claim that it was reasonable to infer his repentence and recantation. Anywhere between the conception of the intent and the overt act toward its commission, there is room for repentence; and the law in its beneficence extends the hand of forgiveness. But when the evil intent is supplemented by the requisite act toward its commission, the statutory offense is completed. "A crime once committed may

be pardoned, but it cannot be obliterated by repentance." 1 Bishop Crim. Law, § 732. If the defendant did not return because he recanted, or because in fact he never entertained the design to destroy the house, why did he not evidence this by returning to his tempted agent and call him off? How did he know but the villain whom he had left there in the darkness, under the powerful incentive of avarice and want, lacking only a match to secure his reward, would obtain one and consummate his contract in the conflagration?

VII. The question was raised in an instruction, and is urged here, that there was no evidence before the jury to

**7. JUDICIAL NOTICE: coal-oil.** sustain the allegation of the indictment that the coal-oil was inflammable. It was not necessary to aver that coal-oil is inflammable or to prove it. Courts and juries will take cognizance of such matters as are of common knowledge, and pertain to the affairs and experience of almost every man's daily life. Courts do not require proof that fire will burn, or powder explode, or gas illuminate, or that many other processes in nature and art produce certain known effects. 1 Greenleaf Ev., § 56; *Brown v. Piper*, 91 U. S. 37; *Udderzook's case*, 76 Pa. St. 340; *Garth v. Caldwell*, 72 Mo. 622; *Nagel v. Mo. Pac. R'y Co.*, 75 Mo. 665, 666.

VIII. On the trial the State's attorney read in evidence, against defendant's objection, two applications previ-

**8. ———: evidence: admissions.** ously made by defendant for continuance, in which, he in effect admitted that he did tempt the man McMahan to fire the building; but alleged in explanation thereof, that he suspected that McMahan was of bad character and tempted him to the commission of said crime to test his integrity; and that he had informed certain parties of his suspicions, and let them into his plan to entrap McMahan. He sought and obtained a continuance to enable him to procure the testimony of said witnesses. But they were never produced. Evidently the State introduced the affidavits as admissions on defendant's

part of the fact that he did solicit McMahan to commit the act. But defendant claims that this course on the part of the State should be treated as if he had been made a witness by the State, and, therefore, it was bound to accept as true the whole of his statement, and could not impeach a witness whom itself had introduced to the jury. This is an evident misapplication of the rule invoked. The affidavits were introduced as admissions of the party defendant. They were competent for such purpose. *Gould v. Trowbridge*, 32 Mo. 292, 294.

It is always competent for the one party to put in evidence the admissions of the adverse party; but such admissions are not conclusive against him. He may explain them. And the jury are to determine what weight is to be attached to them. *Cafferatta v. Cafferatta*, 23 Mo. 235. It is equally true that the party against whom the admission is introduced, is entitled to have the whole of the statement accompanying and explaining the admission go to the jury. *State v. Martin*, 28 Mo. 530. But his whole statement going before the jury, they are the sole judges of its weight and purport; and are at liberty to credit that part which inculpates the prisoner, and to discredit that which exculpates him. This is the well settled rule of this court. *Green v. State*, 13 Mo. 382; *State v. Carlisle*, 57 Mo. 102, 106; *State v. Hill*, 65 Mo. 84; *State v. Napier*, 65 Mo. 462. Presumably it was in reference to this evidence that defendant asked the following instruction numbered nine: " The court instructs the jury that when a party introduces testimony he thereby vouches for the truthfulness of such testimony." And from its being objectionable on account of its abstract form, it was improper as applied to the facts of the case, and, therefore, was properly refused.

There are other minor matters brought to our attention by defendant's counsel, evidencing his zeal and ability. We have fully considered them. They show no error, and contain no principle of law needful of re-examination.

The probative force of the evidence and the credibility of the witnesses, were matters, under the circumstances of this case, peculiarly within the province of the jury.

We find no error of law in the record, of any moment. The judgment of the circuit court is, therefore, affirmed. All concur.