# Parrish *v.* The State.

## *Indictment for Murder.*

1. *Organization of jury; examination of juror upon his voir dire.* In the organization of a jury for the trial of a capital case, where the court has examined a juror on his *voir dire* and among other things he states that he has no fixed opinion in the case, and the court has pronounced such juror competent, it is not error for the court to refuse to, ask, or to allow the defendant to ask, such juror the further question, as to whether he has "any opinion at all as to the merits of the case, or whether or not he had heard the facts of the case discussed.

2. *Same; same.*—In such a case, where, upon his examination *voir dire* a juror says that he was a conductor on a certain street railway, and after said juror has been pronounced competent by the court, it is not error for the court to refuse to allow the defendant to ask said juror: "What car line do you run on?"

3. *Homicide; admissibility of evidence.*—On a trial under an indictment for murder, where a witness testifies that he was present at the time of the homicide which occurred where there were several people, and that he did not hear any conversation between the defendant and the deceased, it is per-

missible for the State to ask the witness whether or not he heard any other conversation; and the answer of the witness in which he testified to certain statements by deceased and also certain statements made by the defendant immediately after the shooting, are admissible.

4. *Same; same.*—On a trial under an indictment for murder, where the evidence shows that the deceased, while being put off the car by a police officer was shot by the defendant, it is permissible for a witness who was present at the time of the killing and who was assisting the officer, to testify to statements made by the defendant to the officer, in response to the latter's inquiry as to why he shot the deceased; such statements involving the defendant's admission of the killing.

5. *Witness: when witness can not be asked as to the payment of his expenses.*—Where, in a trial under an indictment for murder, one of the witnesses for the State testified that he lived in Memphis, Tennessee, and that he knew a brother of the deceased, it is not competent for the defendant, on the cross-examination of said witness, to ask him, what had caused him to come from Memphis to the place of the trial, or as to whether the witness himself paid his expenses; such questions not being permissible to show bias or interest in the case, and the mere fact that he knew the brother of the deceased, not being sufficient to show bias or interest.

6. *Homicide; admissibility of evidence.*—On a trial under an indictment for murder, where one of the witnesses for the State, on his cross-examination, testified that he knew a brother of the deceased, that said brother kept a saloon and that shortly after arriving in the city where the trial was had he went to the saloon kept by the brother of the deceased, it is not error for the court upon the re-direct examination of the witness, to permit the State to ask him if he knew whether the brother of the deceased owned or clerked in the saloon to which he went.

7. *Trial and its incidents; not error for the court to refuse to require witness to re-answer question.*—There is no duty or propriety requiring a trial court to compel a witness to again answer questions which he has already answered; and in the examination of a witness, it is not error for the court to refuse to require such witness to answer a second time a question which he has already answered.

8. *Evidence; competency of witness to testify as to insanity.*—As to the question of insanity *vel non*, non-expert as well as expert witnesses may express their opinion as to the sanity or insanity of a defendant on trial for crime; but such witness

[Parrish v. The State.]

must first be shown to be competent or qualified to give an opinion as to the sanity or insanity on the party inquired about.

9. *Same; same.* — The question as to the competency of a witness, whether expert or non-expert, to give an opinion as to the sanity or insanity of a defendant on trial for crime, is a question for the determination of the court and not for the jury; and the court's decision as to this question will not be revised, unless it clearly appears to have been erroneous.

10. *Insanity; competency of expert and non-expert witnesses to give an opinion.*—An expert witness may give an opinion as to the sanity or insanity of an individual based solely upon a hypothetical question, without any personal knowledge or acquaintance with the individual inquired about; but a non-expert witness can not give an opinion as to the sanity or insanity of an individual inquired about, based solely or in part upon an abstract hypothetical question, but his opinion must be based solely upon his own personal knowledge, observation, acquaintance, experience, &c. with the individual inquired about.

11. *Same; competency of non-expert witness.*—While a non-expert witness may give his opinion as to the sanity of a person inquired about, by first merely generally denying the existence of any facts showing an abnormal or unnatural state of mind, yet, in order for a non-expert to give an opinion as the the insanity of such person, he must first state specifically the facts claimed to show or indicate an abnormal condition of mind.

12. *Same; hypothetical question to expert witness.*—Where there is no dispute as to the facts upon the question of insanity, a hypothetical question propounded to an expert witness should embrace substantially all the facts of the particular case; but if the evidence is in conflict as to the facts tending to show insanity, the hypothetical question may, and should, properly embrace only the facts tending to support the particular theory of the party asking the question, and the opposing party may propound questions to the witness embracing facts which tend to support his theory.

13. *Same; competency of hypothetical question.*—In the examination of an expert witness, upon the question of the insanity vel non of the person inquired about, a hypothetical question propounded to such expert witness should not contain matter as to which no evidence has been introduced.

[Parrish v. The State.]

14. *Same; cross examination.*—Expert witnesses may be cross examined and their opinions obtained, based upon facts assumed by the party examining them to have been proven upon a hypothetical case; and they may also be cross-examined on purely imaginary and abstract questions.

15. *Opinion of expert witnesses; weight and sufficiency.*—The opinions of expert witnesses as to insanity, are not conclusive upon a jury; and the weight and sufficiency of such evidence to prove insanity, is a question to be determined solely by the jury.

16. *Insanity; can not be proved by reputation.*—Insanity can not be proved by the reputation of the person inquired about in the community, or his notoriety, or upon hearsay evidence.

17. *Trial and its incidents; action of court as to improper question.* It is not error for the court to refuse to lecture an attorney for asking a witness an improper question, or in declining to instruct the jury as to the impropriety of asking such improper question; the court having sustained the objection to such question, performs its full duty.

18. *Evidence as to insanity; opinion of witness as to how person talked.*—In the trial of a criminal case, where one of the issues involved is the insanity *vel non* of the defendant, it is competent for a non-expert witness who had been with the defendant and talked with him, to testify that the defendant "talked rationally," or that the defendant "seemed to be all right."

19. *Evidence as to insanity; cross-examination of witness.*—Where the defendant in a criminal case interposes the plea of not guilty by reason of insanity, a witness for the State who testifies that he had frequently been with the defendant and had occasion to carefully notice him, and that he was, in his opinion, sane, it is error for the court to refuse to allow the defendant to ask such witness, on cross-examination, if he did not, on that day or the day previous, state to the defendant's brother, in the court house, that the defendant was of unsound mind; and this is true, although the question asked on cross-examination would show a violation of the rule by the defendant's brother and the witness.

20. *Evidence; voluntary confession.*—Statements made by a defendant in a criminal case concerning the commission of the offenses charged, which are shown to have been voluntarily made, are admissible as declarations or confessions against the defendant.

21. *Evidence as to insanity; opinion of witness as to effect of delirium tremens.*—On a trial under indictment for murder, where one of the issues involved is whether the defendant was insane

[Parrish v. The State.]

at the time of the homicide, and there was evidence tending
to show that the defendant had been under the influence of
intoxicants for several months prior to the homicide, and at
the time of the killing was suffering with *delirium tremens,* it
is not competent on the cross-examination of a physician as
an expert witness, to ask him whether in his opinion a man
suffering with *delirium tremens* could choose between right
and wrong. (Tyson. and Dowdell, JJ., *dissenting.*)

22. *Same; same; remarks of trial judge.*—Where, in such a case,
the court sustained an objection to a question pro-
pounded in the cross-examination of a physician as an expert
witness, if a man with *delirium tremens* would know and
could choose between right and wrong, it is error for the court
to state in the presence and hearing of the jury that the ob-
jection was sustained, "because the *delirium tremens,* of itself,
would not excuse the homicide, even if the defendant could
not choose between right and wrong."

23. *Trial and its incidents; argument of attorney to jury.*—On a
trial under an indictment for murder, where one of the issues
involved is whether the defendant was insane at the time of
the killing, and there is great conflict in the testimony, the
solicitor for the State does not transcend the bounds of legit-
imate argument, if in his closing remarks to the jury he says:
"If he had been insane, as they say, why did they not send
him to an asylum" and "Is there any evidence before you that
any one had complained of his insanity?"

24. *Homicide; pleas of "not guilty" and "not guilty by reason of
insanity; burden of proof.*—On a trial under an indictment
for murder, where the defendant interposes the plea of "not
guilty," and the statutory plea of "not guilty by reason of in-
sanity," the burden of proof as to the first plea is upon the
State to satisfy the jury beyond a reasonable doubt of the
guilt of the defendant; but as to the second plea, the burden
of proof is upon the defendant to establish the plea of "not
guilty by reason of insanity," to the reasonable satisfaction of
the jury, by a preponderance of evidence; and a reasonable
doubt is not sufficient to acquit the defendant under this plea.

25. *Homicide; pleas of "not guilty" and "not guilty by reason of
insanity"; charge of court to jury.*—On a trial under an in-
dictment for murder, where the defendant interposes his plea
of "not guilty" and the statutory plea of "not guilty by reason
of insanity," charges requested by the State or by the defend-
ant, unless correct as to both the issues involved, should be
limited to the issue as to which they are appropriate; and if

[Parrish v. The State.]

charges requested have a tendency to mislead or to confuse
the jury as to which of the issues they refer, when not appli-
cable to both, should be refused.

26. *Same; same; general affirmative charge.*—On a trial under an
indictment for murder, where the defendant interposes the
plea of "not guilty" and the statutory plea of "not guilty by
reason of insanity," and as to the issues involved under the
plea of not guilty there is no dispute as to any material part
of the evidence and under all the evidence the jury could not
properly have rendered a verdict for the defendant under said
plea, if there was error in refusing the charge requested
by the defendant under the plea of not guilty, it was error
without injury, provided said charge was not applicable or
appropriate under the statutory plea.

APPEAL from the Criminal Court of Jefferson.

Tried before the Hon. DANIEL A. GREENE.

The appellant, Hollis B. Parrish, was indicted and
tried for the murder of George S. Leonard, was con-
victed of murder in the second degree, and sentenced to
the penitentiary for ten years. The defendant pleaded
"not guilty" and "not guilty by reason of insanity."

During the organization of the petit jury for the trial
of the case, one T. W. Riddle was called as a
juror, and upon his examination *voir dire* in re-
sponse to the usual questions propounded by the
court, he stated that he had no fixed opinion
in the case, and thereupon the court pronounced
the juror competent. After this juror had been accepted
by the State, the defendant requested the court to be
allowed to ask the juror the following question: "State
whether or not you have any opinion at all as to the
merits of the case?" The court refused to allow the de-
fendant to ask the juror said question, and to this ruling
the defendant duly excepted. Thereupon the defendant
requested the court to ask the juror the question itself,
and duly excepted to the court's refusal to ask such ques-
tion. The defendant then offered to ask said juror the
following question: "Whether or not he had heard the
facts in the case discussed?" The State objected to this
question, the court sustained the objection, and to this
ruling the defendant duly excepted. Thereupon the de-
fendant requested the court to ask the juror the question

itself, and upon the court declining to ask the juror the said question, the defendant duly excepted.

After one J. M. Davis, who was summoned as a juror had been examined upon his *voir dire* and was pronounced competent by the court and accepted by the State as a juror and had stated, in answer to a question by the defendant, that he was a conductor on the Birmingham Railway, Light & Power Company's road, the defendant asked the said juror Davis the following question: "What car line do you run on?" The State objected to this question, the court sustained the objection, and the defendant duly excepted.

The evidence relating to the facts and circumstances of the killing of George S. Leonard, deceased, by the defendant, was without conflict and showed that the defendant and deceased were riding on the back platform of a street car in the city of Birmingham; that the deceased was talking in a loud voice and said to the defendant, "I'll hang it over your head," referring to some remark which had been previously made; that thereupon Joe Nix, a police officer of the city of Birmingham, who was standing on the rear platform of the car, said to the deceased to hush, and upon the deceased refusing to stop talking in a loud and boisterous manner, the policeman Nix said to the conductor to stop the car, and told the deceased that he was going to put him off; that said policeman put his hand on the deceased's arm and asked one Harris, who was standing on the platform of the car, to take hold of the deceased; that at this time the defendant pulled his pistol from his right hip pocket, reached his arm around Nix, the policeman, and fired one shot, which inflicted the fatal wound upon the deceased; that upon discovering what had been done, the policeman asked the defendant what he was doing, and what made him shoot the deceased; that the defendant answered: "Because he was resisting you, Joe?"

One L. E. Thomas was introduced as a witness for the State, and testified that he was on the car at the time the defendant shot the deceased; that the defendant was standing on the back of the platform of the car at the

time the shot was fired.    This witness then testified that
he did not hear any conversation between the defendant
and the deceased.    Thereupon the State asked the wit-
ness the following question:    "Did you hear any other
conversation?"    The defendant objected to this question
upon the ground that it called for irrelevant, immaterial
and incompetent evidence.    The court overruled the ob-
jection, and the defendant duly excepted.    The witness
answered that he heard nothing, except that after the de-
ceased was taken off the platform on to the ground, he
heard him say, "I am a dead man," to which Mr. Nix, the
policeman, replied, "Yes, I think you are"; that he then
heard Nix say to the defendant, "That is a dirty, low
down trick, what did you do it for," and to this the de-
fendant replied, "Because he was resisting you, Joe."
The defendant moved the court to exclude the answer of
this witness to said question, upon the ground that it
was illegal, irrelevant and not responsive.    The court
overruled the objection, and the defendant duly ex-
cepted.

Upon the introduction of one T. N. Harris, as a wit-
ness for the State, he testified that he was on the car at
the time the defendant shot the deceased; that he heard
the policeman Nix tell the deceased to hush, and upon
his not complying with the request, he heard Nix tell
the conductor to stop the car; that the policeman then
requested the witness to take hold of the deceased and
assist him in putting him off the car, and that just as the
witness got behind the policeman and the deceased, the
defendant pulled his pistol and, reaching around Nix,
shot Leonard.    Thereupon the State asked the witness
the following question:    "Did you hear officer Nix say
anything to Parrish about shooting the deceased?"    The
defendant objected to this question, because it called for
illegal, irrelevant and incompetent testimony.    The
court overruled the objection and the defendant duly ex-
cepted.    The witness    answered that he heard the
officer Nix say to Parrish, "What made you do it?
that was a dirty trick."    The defendant moved the court
to exclude this answer, upon the same grounds, and duly
excepted to the court overruling the motion.    Upon the

witness further testifying that he heard Parrish tell the officer that he shot the deceased because he was resisting the officer, the defendant moved to exclude the answer, upon the ground that it was illegal and incompetent testimony; and duly excepted to the court overruling his motion. On cross-examination this witness Harris testified that he lived in Memphis, Tennessee, and that he had known Frank Leonard, a brother of the deceased, about four years. Thereupon the defendant asked the witness the following question: "How much did it cost you to come from Memphis here?" The State objected to this question, the court sustained the objection, and the defendant duly excepted. The defendant then asked the witness what time he went to Frank Leonard's saloon, and the witness answered that shortly after arriving in Birmingham from Memphis he went around to Leonard's saloon. Thereupon the defendant asked the witness the following question: "Did you pay your expenses from Memphis here?" The court sustained the State's objection to this question, and to this ruling the defendant duly excepted. On re-direct examination, after stating to the witness that he had been asked on his cross-examination if Frank Leonard ran a saloon, the State then asked him the following question: "Do you know whether or not he (Frank Leonard) owns it or is a clerk in the saloon?" The defendant objected to this question, on the ground that it called for irrelevant, immaterial and illegal testimony, and duly excepted to the court overruling his objection.

One J. S. Miller, a witness for the State, testified that he was a conductor on the car at the time the deceased was shot and detailed the circumstances of the shooting in substantially the same manner as above stated. Upon his cross-examination the witness was asked if he was ever in Frank Leonard's place of business, and upon answering that he had been in Frank Leonard's place of business, the following examination was had: Question. "Did you talk to Frank Leonard in there?" Answer: "No, sir." Q. "With whom did you talk in there?" A. "I was talking to witness Harris." Q.

[Parrish v. The State.]

"When was that?" A. "I don't remember." Q. "Was it before this case was set for trial?" A. "I don't remember." Q. "Was it yesterday?" A. "No, sir." Q. "About when was it?" A. "I won't say, I don't remember." Q. "You know it was not yesterday, last night or today?" Upon the witness making no answer to this last question, the defendant's counsel requested the court to require the witness to answer said question, the court declined to do so, stating that the witness had already answered three or four times that he did not remember when he was in the saloon. To this ruling of the court the defendant duly excepted.

There were many witnesses introduced by the defendant, whose testimony tended to show that the defendant was insane. There was testimony for the defendant to the effect that he was a young man; that he . was a practicing attorney at the time of. the homicide; that for several months prior to the killing he had drank intemperately; that he was at all times under the influence of whiskey or some narcotic; that he would do many strange things; at times would not recognize his father or his best friends, and gave other symptoms of being unbalanced in mind. There was also some evidence introduced on the part of the defendant tending to show that at the time of the shooting the defendant was either suffering from *delirium tremens,* or was on the verge of that disease.

John W. Altman was introduced as a witness for the defendant. He testified that he was a member of the Birmingham bar; that he had known the defendant six or eight years; that for five or six months prior to the homicide the defendant was always constantly under the influence of whiskey; that on some occasions he would converse intelligently, but on others he would talk incoherently and disconnectedly; that from witness' conversations with the defendant and from his observations of his conduct, he would say that the defendant was a man of unsound mind. Thereupon, the defendant asked the witness the following questions, to which the State separately objected and the court sustained each of said objections to each of which rulings the defendant duly and separately excepted: "Tell the jury whether or not

the defendant had been regarded in the community as a man of unsound mind?" "State whether or not before the killing, he was regarded by the members of the bar as a man of unsound mind?" "State whether or not the defendant had the general reputation in the community among those who knew him, as being a man of unsound mind?"

One W. T. Clayton was introduced as a witness for the defendant, and testified that he had known the defendant for about three years; that five or six months just before the homicide, he saw the defendant frequently; and that the defendant had been his attorney for about a year. Thereupon the defendant asked the witness the following question: "State whether or not, during the four or five months prior to the killing, you ever saw the defendant when he appeared to be in his right mind?" The witness answered that he had not. The State objected to the question and moved the court to exclude the answer. The court sustained the State's objection and the motion to exclude, and to each of these rulings the defendant separately excepted.

Upon the introduction of one W. J. Martin, as a witness for the defendant, he testified that he was a practicing attorney at the Birmingham bar and had known the defendant for about three years; that for three months previous to the killing he occupied a law office adjoining the defendant; that during these three months the defendant was continuously under the influence of some intoxicant or drug, and would talk incoherently and irrationally; that he could not carry on a connected conversation on any subject, and that in the witness' opinion he was insane for three or four months before the killing. Upon cross-examination the witness stated that the defendant had been in jail ever since the killing. The State then asked the witness the following question: "The judge refused him bail did he not?" The court sustained the defendant's objection to this question, and thereupon the State asked the witness the following question: "Did he not sue out a writ of *habeas corpus,* and the judge denied him bail?" The court also sustained the defendant's objection to this question.

"Did he not sue out a writ of *habeas corpus*, and the judge denied him bail?" The court also sustained the defendant's objection to this question.

The bill of exceptions then contains the following recital as to the State asking such question: "Whereupon the defendant requested the court to instruct the jury that the question was improper. The court stated that by sustaining the objection he had decided that the question was improper. The defendant's counsel then requested that the court instruct the jury that the question was improper, the court declined to so instruct the jury at defendant's request, and the defendant excepted to the court's ruling thereon; and the defendant then requested the court to instruct the jury that the question was improper, and asked the court to reprimand the solicitor in the presence of the jury for repeatedly asking a question which he knew was improper. The court declined to so instruct the jury and to so reprimand the solicitor, and to the court's ruling thereon the defendant then and there duly excepted."

Upon the State's witness Joe Nix being recalled by the defendant, for further cross-examination, he testified that the deceased at the time he was shot was under the influence of whiskey and jerked loose from the witness just before he was shot. Upon the re-direct examination by the State of the police officer Nix, said witness testified that he did not remember that Parrish, the defendant, said anything at all to the deceased before the shooting; that after the shooting, when the witness took hold of the defendant, he, the defendant, walked all right and talked all right, and that he did not notice anything unusual about him. Thereupon the State asked the witness the following question: "Did he talk rationally or irrationally?" The witness answered that he talked rationally. The defendant moved to exclude the answer upon the ground that such answer stated the conclusion of the witness. The court overruled the motion and the defendant duly excepted.

One Dan Jones was introduced as a witness for the State in rebuttal, and after having testified that he knew the defendant and had several conversations with him and an opportunity to judge of his mental capacity, the

witness stated that he regarded him as a man of sound mind. Upon the cross-examination of said witness, the defendant asked him the following question: "Did you not say to defendant's brother, W. D. Parrish, this morning or yesterday, out in the hall of the court house, that all you had to say was that his brother (the defendant) was of unsound mind?" The State objected to this question, because it showed a violation of the rule by the defendant's brother and the witness. The court sustained this objection and the defendant duly excepted.

In rebuttal the State introduced Dr. B. L. Wyman as an expert witness. Dr. Wyman testified that he had had a great deal of experience in the New York State Lunatic Asylum and at the Alabama Insane Hospital, and by his testimony showed that he was an expert on insanity. The State asked Dr. Wyman a question, which hypothesized many facts and also the opinion of an expert. This question of itself contained about a thousand words. The defendant objected to the question upon the following grounds: 1. Said question does not correctly set forth in the hypothesis the facts of the case and contained matters which are not in evidence. 2. Said question is illegal, incompetent and invades the province of the jury. The court overruled the defendant's objection and to this ruling the defendant duly excepted. The witness stated in answer to the hypothetical questions that he did not regard the defendant as insane and that at the time of the shooting he considered that he knew right from wrong.

The State introduced as a witness in rebuttal one Austin who was the chief of police of the city of Birmingham at the time of the killing, and the witness Austin testified that he saw the defendant fifteen or twenty minutes after the shooting, at the county jail; that the defendant said he wanted to talk with him; that the defendant asked the witness if the man was dead, and after telling the defendant that he was, he asked the defendant why he shot the deceased, to which the defendant replied, that he did it to protect Joe Nix; that thereupon the defendant asked the witness what he thought they

would do with it, and the witness replied that he thought that if what he heard was true, it was a bad case and they might hang him. The foregoing testimony of the witness Austin was in response to the following question propounded to him by the State: "Did you have a conversation with the defendant, and state what was the conversation?" The defendant objected to the question, upon the ground that it called for illegal and incompetent testimony, and upon the court overruling the objection, the defendant excepted. It was shown that no inducements were offered or threats made to the defendant to induce him to make the statements testified to by the witness Austin. The State further asked the witness the following question: "Was there anything unusual in his (defendant's) conduct and appearance?" The defendant objected to this question upon the ground that it called for incompetent, illegal and immaterial testimony. The witness answered that his face was very much flushed and he seemed sleepy-eyed.

Upon a witness for the State testifying that the defendant seemed all right and that he talked rationally, the defendant objected to such testimony and moved that the court exclude it upon the ground that it was irrelevant, immaterial and inadmissible. The court overruled the objection and refused to exclude the testimony, and to this ruling the defendant duly excepted.

Upon the cross-examination of Dr. W. P. McAdory, and after he had testified that there was a disease known as acute alcoholism which affected and impaired the brain, and after continuous and prolonged indulgence in whiskey and other intoxicants would result in the reason being dethroned, he was asked by the defendant, upon the cross-examination, the following question: "Suppose the defendant, on the day before the killing, was seen by a reputable physician, who, at the time stated that the defendant was on the verge of *delirium tremens* and on the day after the killing you find him with *delirium tremens*, would you say that the man with *delirium tremens* could choose between right and wrong?" The witness answered: "I did not say that he had them." The defendant then asked the following question: "I asked you, if under the hypothesis, he would know or

could choose between right and wrong?" The State objected to this question, the court sustained the objection, and to this ruling of the court the defendant duly excepted. The bill of exceptions recites that "the court then stated in the presence and hearing of the jury that he would sustain the objection because *delirium tremens* of itself would not excuse a homicide, even if the defendant could not choose between right and wrong. The defendant then and there duly excepted to the above statement by the court."

In reference to the solicitor's closing argument to the jury, the bill of exceptions contains the following recital: "The solicitor in making the closing argument for the State, said 'If he had been insane, as they say, why had they not sent him to the asylum.' The defendant objected to said argument, and asked the court to exclude the same on the ground that the same was improper, illegal, and highly prejudicial to the defendant; the court overruled defendant's objection and motion, and to the court's ruling thereon the defendant then and there duly excepted. The solicitor, in his closing argument to the jury, further said: 'Is there any evidence before you that any one had complained of his insanity?' The defendant then and there objected to said argument and asked the court to exclude the same from the jury on the ground that the said argument was illegal, improper and highly prejudicial; the court overruled the objection, and the defendant then and there duly excepted."

The defendant separately excepted to several portions of the court's oral charge which was given to the jury in writing at the request of the defendant; but it is deemed unnecessary to set out these separate charges.

Among the fifty-five charges requested by the defendant and to the refusal to give each of which the defendant separately excepted, were the following: (1.) "If you believe the evidence in this case you will find that the defendant did not provoke or bring on the original difficulty with deceased." (2.) "You must not convict the defendant of any offense if you entertain a reasonable doubt of the existence of any necessary ingredient of that offense." (3.) "The burden of proof in this case

is not upon the defendant to generate in your minds a reasonable doubt of his guilt." (4.) "If after a fair consideration of all the evidence, the jury are reasonably uncertain as to whether the defendant is guilty of unlawful homicide the defendant must be acquitted." (6.) "If the evidence is such as to leave the jury in reasonable doubt of the defendant's guilt, the defendant is entitled to an acquittal, and that doubt may exist, notwithstanding the preponderance of the evidence is in favor of guilt." (7.) "It is the duty of the jury to consider the evidence tending to show a justifying motive in connection with the other evidence in the case, and if they are in reasonable doubt of his guilt they shall acquit him." (8.) "If the jury have a reasonable doubt as to whether the killing was done deliberately, or as to whether it was done premeditatedly, then they cannot find the defendant guilty of murder in the first degree, and if they have a reasonable doubt as to whether the killing was done in malice, then they can not find the defendant guilty of murder in either degree, but only of manslaughter in the most; and if, after considering all the evidence, the jury have a reasonable doubt as to the defendant's guilt of manslaughter, arising out of any part of the evidence, they should find the defendant not guilty of any offense." (9.) "The court charges the jury that before they can convict defendant, the evidence must be so strong as to convince each juror of his guilt beyond a reasonable doubt, and if after considering all the evidence a single juror has a reasonable doubt of defendant's guilt arising out of any part of the evidence, then they cannot convict him." (10.) "Although you may believe from the evidence that it is possible that the defendant is guilty, but if at the same time you also reasonably doubt whether he is guilty or not, you must acquit him." (14). "The court charges the jury that the evidence sufficient to convict the defendant should not be a mere preponderance of probabilities, but should be so strong as to convince the jury that the defendant is guilty beyond a reasonable doubt." (15.) "If the jury upon considering all the evidence have a reasonable doubt of the defendant's guilt arising out of any part of the evidence, they must

find the defendant not guilty." (16.) "The burden of proof is never on the accused to establish his innocence or to disprove the fact necessary to establish the crime for which he is on trial. The burden is on the prosecution from the beginning to the end of the trial and applies to every element necessary to constitute the crime." (17.) "I charge you to acquit unless the evidence excludes every reasonable supposition but that of the defendant's guilt." (18.) "The law does not presume that a murder has been committed, nor does it presume that the defendant was sane at the time the fatal shot was fired, if the evidence reasonably convinces you that he was probably insane at said time." (20.) "The jury are not necessarily governed by the preponderance of the evidence. If the evidence tending to acquit the defendant of guilt, however small compared with that tending to show his guilt, is such that from a due consideration of it, they are not satisfied beyond a reasonable doubt of the defendant's guilt, they must acquit him." (21.) "If from the evidence there arises any reasonable hypothesis consistent with the defendant's innocence, the jury must acquit him." (26.) "If you believe from the evidence that the defendant, situated as he was, thought it was necessary for him to shoot the deceased to protect police officer Nix, and that such necessity seemed apparent to him solely because his mind was diseased to the extent of depriving him of the power to choose right from wrong, you will return a verdict under the plea of insanity." (30.) "When it is satisfactorily shown that the accused was mentally diseased at the time he did the act, charged as an offense, and that he did the act in consequence solely of such mental disease, without which it would not have been done, this is a complete defense, even though the defendant knew the act was wrong." (35.) "If, after a fair consideration of all the evidence, any material fact in this case generates a reasonable doubt of the defendant's guilt in the mind of any individual juror, the jury cannot convict the defendant." (36.) "If, after a fair consideration of all the evidence, the jury have a

reasonable doubt of the defendant's guilt growing out of any material fact in the case, the jury must acquit the defendant." (37.) "If you are reasonably satisfied from the evidence that the defendant was insane shortly before and shortly after the fatal shot was fired, there is no presumption that he was sane at the time the fatal shot was fired." (38.) "If you are reasonably satisfied from the evidence that the defendant was insane shortly before the fatal shot was fired and shortly thereafter, and that such insanity had continued for months prior to the time the fatal shot was fired, there is a presump-. tion that he was insane at the time the fatal shot was fired." (39.) "If you believe the evidence in this case, when one is suffering from *delirium tremens* he is for the time being as irresponsible in law for his acts as if he was suffering from a lesion of the brain." (40.) "I charge you, if you believe the evidence, the undisputed evidence shows that *delirium tremens* is a disease of the brain that is functional, and for the time being renders one incapable of distinguishing between right and wrong, and incaple of choosing right from wrong." (41.) "I charge you, gentlemen of the jury, that if you believe the evidence, the undisputed evidence shows that acute alcoholism is a disease of the brain which at the time being renders one irresponsible for his acts and incapable of distinguishing between right and wrong, and incapable of choosing right from wrong." (42.) "If the jury are reasonably satisfied from the evidence that at the time the fatal shot was fired the defendant was suffering from *delirium tremens* or from acute alcoholism, or from a lesion of the brain, it will be your duty to find the defendant insane at the time of the commission of the offense." (43.) "If you are reasonably satisfied from the evidence that the defendant shot the deceased under the delusion that the deceased was about to inflict great bodily harm upon him or officer Nix, and that such delusion was produced solely by a diseased brain brought about by acute alcoholism, you will find a verdict in favor of the defendant on his plea of insanity." (44.) "If you are reasonably satisfied from the evidence that the defendant was laboring under an hal-

lucination or delusion, the offspring of a diseased mind which solely prompted him to kill deceased, you must find a verdict in his favor under his plea of insanity." (45.) "I charge you that if you believe the evidence in this case you will find that acute alcoholism is a species of insanity which may render one irresponsible in law for his acts." (46.) "I charge you that under the evidence in this case that insanity, if produced by acute alcoholism, renders one irrational and irresponsible." (48.) "If the jury find that the defendant was insane at the time of the commission of the alleged offense, he will, under the law, be confined in the State Asylum." (51.) "If the defendant without fault fired the fatal shot under the mental delusion that he was protecting himself from apparent and imminent peril of suffering great bodily harm, from which there appeared to him under such delusion that there was no probable escape, you must find in his favor under the plea of insanity, provided you are reasonably satisfied from the evidence that such mental delusion was solely the offspring of a diseased mind." (53.) "If the jury are reasonably satisfied by the preponderance of the evidence in the case that at the time of the commission of the homicide, charged in the indictment, the defendant had *delirium tremens,* and as a result of such disease of the brain, the defendant fired the fatal shot, then the jury should render a special verdict that the defendant is not guilty by reason of insanity." (54.) "*Delirium tremens,* although the result or consequence of continued, excessive and protracted drunkenness, is under the law insanity, or a diseased state of the mind, and affects responsibility for crime in the same way as insanity produced by any other cause."

The bill of exceptions contains the following recitals as to the jury asking for further instruction, and the defendant requesting the court to give the jury certain additional written charges: "After the jury had retired to the jury room to consider their verdict, and had been in said jury room considering their verdict for about twenty-four hours, the jury returned to the court room and stated to the court that they were unable to agree

upon a verdict, and in answer to the inquiry of the court
as to whether or not it was a question of law or a ques-
tion of fact about which they could not agree, the jury
stated that it was a question of fact. Whereupon the
court told them that he could only instruct them on
questions of law, and that they were the sole judges of
the facts. Thereupon the defendant, before said jury had
retired, offered to the court in the presence of the jury,
separately and severally, the following written charges,
numbered A, B, C and D, and then and there requested
the court to separately and severally endorse each of the
said charges 'Given,' and the court declined to pass upon
each of said charges and to endorse given or refused on
the same, separately and severally as requested by the
defendant, to which ruling of the court the defendant in
open court and in presence of the jury duly excepted.
Thereupon the court instructed the jury to retire to fur-
ther consider their verdict. The following charges
marked 'A,' 'B,' 'C' and 'D' respectively are the written
charges which were separately and severally offered to
the court by the defendant in the presence of the jury,
and which the defendant separately and severally re-
quested the court to endorse 'Given,' and are the written
charges which the court declined separately and sever-
ally to endorse 'Given' or 'Refused' thereon, to-wit:
(A.) 'I charge you that nothing in my written charge
setting forth the tendency of the evidence should influ-
ence your verdict in finding what the facts are. You
are the sole judges of the facts and the court has noth-
ing to do with influencing your verdict as to what the
facts are.' (B.) 'The court charges the jury that under
the plea of not guilty, the burden of proof is on the state.'
(C.) 'The court charges the jury that under the plea of
insanity, the burden of proof is on the defendant to reas-
onably satisfy you of his insanity.' (D.) 'Before you
can convict the defendant you must be reasonably sat-
isfied that the offense was committed in Jefferson county
before the finding of the indictment.' "

HUGH MORROW and BOWMAN, HARSH & BEDDOW, for
appellant.—After the State's witness Thomas had testi-

fied that he did not hear any conversation between the defendant and the deceased just prior to the shooting, it was error for the court to allow the State to ask the witness if he heard any other conversation.—8 Pleading & Practice, 134; *Talbert v. State,* 87 Ala. 29.

The witness Jones was not shown to have been sufficiently familiar with the defendant to testify as to his sanity or insanity.—*Dominick v. Randolph,* 124 Ala. 564; *Ford v. State,* 71 Ala. 387; *Norris v. State,* 16 Ala. 776.

The reason for allowing hypothetical questions is to get the opinion of an expert upon the hypothesis that the facts stated are actually true.—*Bir. R. & E. Co. v. Butler,* 135 Ala. 395; *Page v. State,* 61 Ala. 18; *Rush v. Wabash West. R. R. Co.,* 18 L. R. A. 824.

The hypothetical question propounded to Dr. Wyman should not have been allowed.—*Regina v. Richards,* 1 F. & F. Rep. 87; *In re Rush,* 53 N. Y. Sup. 582; *Mut. L. Ins. Co. v. Simpson,* 28 S. W. Rep. 839; *Wyse v. Wyse,* 49 N. E. Rep. 943; *Walker v. Walker,* 34 Ala. 473; *Gunter v. State,* 83 Ala. 96.

The court saying in the presence of the jury that *"delirium tremens* of itself would not excuse the homicide, even if the defendant could not choose between right and wrong," was highly prejudicial to the defendant, being practically equivalent to a charge of the court to that effect. The court was wrong on the legal proposition. It is said in May's Criminal Law (ed. 1881), Sec. 23, p. 19, that "this like any other mental disease induced by long and excessive indulgence which impairs the mind or controls its operation to such an extent that the person afflicted cannot distinguish right from wrong, * * * * may relieve from responsibility."—See also *David McConnehy v. State,* 5 Ohio State, 77; *State v. Neal McGonical,* 5 Harrington (Del.) 510; *U. S. v. Drew,* 5 Mason (U. S. Ct.) 28; 16 Am. & Eng. Ency. Law, § 8, p. 563; *Beasley v. State,* 50 Ala. 149.

There are several errors in the general charge of the court. The defendant especially excepted to the part of the charge of the court as follows: "That departure

must have been brought about by disease of the brain and in *sole* consequence thereof." This precludes using mental aberation or temporary insanity as a defense, though a disease of the brain was one of the contributing causes, and no matter to what extent, even to the depriving defendant of the power of self-control and a knowledge of right and wrong. This is not the law. The court further told the jury that *"delirium tremens,* alcoholism, acute and chronic, if the results of indulgence in liquor, are to be considered like all other resultant effects of alcohol." This is the equivalent of telling the jury that *delirium tremens* was no more a defense that maudlin drunkenness, the direct result of voluntary drinking.—*David McConnehy v. State,* 5 Ohio State 77; *State v. Neal McGonical,* 5 Harrington (Del.) 510; *U. S. v. Drew,* 5 Mason (U. S. Ct.) p. 28; 16 Am. & Eng. Ency. Law, § 8, p. 563; *Beasley v. State,* 50 Ala. 149; Lawson on Insanity, page 54.

MASSEY WILSON, Attorney-General for the State.— The court properly refused to permit the defendant to interrogate the juror Riddle.—*Carr v. State,* 104 Ala. 4.

The question asked the witness Thomas and the answer thereto, to which defendant objected, were proper. The answer was responsive to the question. It appears that this conversation was part of the *res gestae* of the killing and admissible as such.—*Domingus v. State,* 94 Ala. 9; *Barker v. State,* 126 Ala. 69.

The testimony of the witness Harris to which the defendant objected was properly admitted, being part of the *res gestae.*—*Domingus v. State,* 94 Ala. 12.

How much it cost for the witness Harris to come to Birmingham from Memphis, and who paid his expenses, were wholly immaterial inquiries. The purpose of the questions, doubtless, was to show that the witness' expenses had been paid by the prosecution. This would not show hostile feeling on the part of the witness towards defendant. The testimony was properly excluded.—*Carpenter v. State,* 98 Ala. 31.

If the inquiry as to Frank Leonard's saloon was improperly brought out the defendant could not complain,

since the first reference to this was in answer to questions asked the witness by defendant.—*Morgan v. State,* 88 Ala. 223. Besides the question was not answered and no injury resulted.

The action of the court in refusing to require the witness Miller to answer the question asked him by the defendant was discretionary with the court. The witness is shown to have answered the question several times, and there was no reason why he should have been forced to make further answer.—8 Enc. Pl. & Pr. 74.

The general reputation in the community of the defendant's mental condition is not admissible in evidence, and the objections to the questions asked the witness Altman seeking to bring out such testimony were properly sustained.—*Kimbrell v. State,* 130 Ala. 40, 44; 16 Am. & Eng. Ency. Law, (2d ed.), 612, and cases cited to note 7; *Mitchell v. State,* 114 Ala. 1; *Sanders v. State,* 105 Ala. 4.

The action of the court in sustaining the objection of the defendant to the questions asked the witness Martin, was all the defendant could have asked. The court was under no duty to instruct the jury that the questions were improper, or to reprimand the solicitor for asking them. Such extreme action is seldom authorized and certainly not by the facts shown by this record.—*Downey v. State,* 115 Ala. 108, 112

The action of the court in sustaining the State's motion to exclude the answer of the witness Clayton, was doubtless based on the ground that the witness did not state the circumstances on which his opinion of insanity was based, and upon that ground the action of the court was proper.—*Ford v. State,* 71 Ala. 385, 397.

That the defendant at the time of the killing, talked rationally, was the proper subject of proof. This, a human emotion, may be proven by the opinion of the person making the observation.—*Jenkins v. State,* 82 Ala. 25; *Thornton v. State,* 113 Ala. 43.

The witness Jones was properly permitted to express an opinion as to the sanity of the defendant, his acquaintance with him being shown to have been of suffi-

cient intimacy to enable him to form a correct opinion. *Caddell v. State,* 129 Ala. 65; *Ford v. State, supra.*

The action of the court in refusing to permit the defendant to ask the witness Jones whether he had not, at the time mentioned, made a statement to defendant's brother, was, it is submitted, a matter within the discretion of the trial court.—*Sanders v. State,* 105 Ala. 4.

The statement of the witness Linn that the defendant "seemed to be all right," was properly admitted.— *Thornton v. State,* 113 Ala. 43; *Caddell v. State,* 129 Ala. 57, 65.

It was entirely competent for the State to prove the mental condition of the defendant after the commission of the offense.—*Cawley v. State,* 133 Ala. 128-138; *McAllister v. State,* 17 Ala. 434; *Gardner v. State,* 96 Ala. 12, 15; *Gunter v. State,* 83 Ala. 96.

The statement of the court that *delirium tremens* of itself would not excuse a crime, was proper. There was no evidence that defendant's mind was unsound, except that related directly to the effect produced upon his mind by excessive drinking; no effort was made to prove any species of mental unsoundness except that caused by over-drinking.

It is a rule well settled by our decisions, that drunkenness will not excuse homicide. It may have the effect of rendering the intoxicated person incapable of forming a specific intent, but it cannot have the effect of reducing a homicide below murder in the second degree.— *Beasley v. State,* 50 Ala. 149; *Tidwell v. State,* 70 Ala. 33, 46; *Morrison v. State,* 84 Ala. 405; *King v. State,* 90 Ala. 612; *Chatham v. State,* 92 Ala. 47; *Whitten v. State,* 115 Ala. 72.

The charges which were refused to the defendant were properly refused.—*Mann v. State,* 134 Ala. 1; *Burton v. State,* 115 Ala. 1; *Liner v. State,* 124 Ala. 1; *Prince v. State,* 100 Ala. 144; *Yarbrough v. State,* 105 Ala. 43; *Bonner v. State,* 107 Ala. 97; *Porter v. State,* 135 Ala. 51; *Smith v. State,* 88 Ala. 73; *Smith v. State,* 103 Ala. 4; *Maxwell v. State,* 89 Ala. 150; *Crawford v. State,* 112 Ala. 1.

TYSON, J.—The defendant was indicted for the murder of George S. Leonard, convicted of murder in the second degree, and sentenced to imprisonment in the penitentiary for ten years. On the trial he interposed two pleas, (1) not guilty, (2) the statutory plea of "not guilty by reason of insanity."

The defendant offered no evidence to disprove the killing. Indeed, there appears to be no dispute as to the facts relating to the killing, and no justification or palliation offered except that tending to show the insanity of defendant.

As to his plea of insanity, there were a great number of witnesses examined by defendant and the State, both experts and non-experts. The evidence was in great conflict. More than a hundred exceptions were reserved by defendant to the rulings of the trial court. These exceptions are embraced in sixty-eight assignments of error.

The first four assignments are as to the *voir dire* examination of two jurors; the next fifty-seven go to the rulings of the trial court as to the evidence. The next goes to a remark of the court in the presence and hearing of the jury. The next three, 63, 64 and 65, go to the refusal by the court to exclude certain remarks of the solicitor made to the jury in his argument; the next, sixty-six, to several parts of the court's charge to the jury. The next, 67, is to the court's refusal to give each of fifty-five separate charges requested by refendant in writing. The last assignment, No. 68, goes to the refusal of the court to give or refuse additional written charges as requested by defendant when the jury returned into the court after they had been considering the case for twenty-four hours and had failed to agree upon a verdict.

There was no error in the court's refusing to propound any of the questions requested or desired as to either of the jurors, Riddle or Davis, nor declining to allow defendant's counsel to propound the questions desired to be propounded to them. The court had examined each of said jurors on his *voir dire* and had pronounced him competent. There was no challenge interposed as to

either of them, and we see no reason for permitting any such speculative examination as was proposed in this case.  If the question had been allowed and answered, the answers, if responsive, would not have shown the jurors subject to challenge for cause.—*Hornsby's case,* 94 Ala. 55; *Bale's case,* 63 Ala. 38; *Carr's case,* 104 Ala. 4; *Hamlin's case,* 90 Ala. 577.

The question asked the witness, Thomas, "Did you hear any other conversation," was properly allowed and the answer was admissible as evidence.

We see no possible valid objection to the questions propounded to, or answers thereto of, the witness, Harris. His statement including, the questions by Nix to defendant and defendant's reply, involved the latter's admission of the killing.  The court very properly refused to allow the witness Harris to answer the question propounded to him, as to what it cost him to come from Memphis, or as to whether the witness himself paid his expenses.  It was not proper to go into the details of such matters which could not be admissible for any purpose unless to impeach or go to the credibility of the witness, to show bias or interest in the case.  If intended for this purpose, the direct question should have been asked him, or some other evidence to show bias or interest such as to color his evidence.  The mere fact that he knew a brother of the deceased was clearly not sufficient to show bias or interest in the case.  There could be no error nor any prejudice to defendant to allow the solicitor to ask the witness, if he knew whether Leonard owned or clerked in the saloon, as to which counsel for defendant had first questioned him.—*Carpenter v. State,* 98 Ala. 33; *Henry v. State,* 79 Ala. 42.

There was no duty or propriety requiring the court to compel a witness to answer a question which the bill of exceptions shows he had already answered.

It would serve no good purpose to examine or discuss separately each objection, exception, or assignment of error as to the admissibility and relevancy of the evidence tending to prove or disprove the insanity of the defendant, and the form of questions to elicit such evidence.  We will proceed to state the rules of law appli-

cable to trials on the question of insanity, and to see if any of these rules were violated or disregarded by the trial court to the possible prejudice of defendant.

It is now well settled law and practice that as to the question of insanity, *vel non,* witnesses whether expert or non-expert may express their opinion as to the sanity or insanity of defendant on trial for crime.—*Ford's case,* 16 Ala. 385; *Burney v. Torrey,* 100 Ala. 157; *Norris' case,* 16 Ala. 776; *Caddell v. State,* 129 Ala. 65; *Fountain v. Brown,* 38 Ala. 72; *Powell v. State,* 25 Ala. 21; *Moore v. Spier,* 80 Ala. 129; *Florey v. Florey,* 24 Ala. 241; *Gunter v. State,* 83 Ala. 96; *Page v. State,* 61 Ala. 16..

The witness, whether expert or not, must first be shown to be competent or qualified to give an opinion as to the sanity or insanity of the party inquired of. The question as to the competency of the witness, whether expert or not, to give an opinion as to the sanity or insanity of the party inquired of, is a question for the court, and not for the jury. As to this question, its decision as to competency will not be revised unless it clearly appears to have been erroneous.—*People v. Mc-Carthy,* 115 Cal. 255; note on p. 733, 38 L. R. A.

An expert witness may give an opinion as to the sanity or insanity of an individual based solely upon a hypothetical question, without any personal knowledge or acquaintance with the individual inquired of.—*Gunter v. State,* 83 Ala. 96; *Burt v. State,* (Texas) 39 L. R. A. 305, (and note which cites the authorities).

A non-expert witness can not give an opinion as to the sanity or insanity, of the individual inquired of, based in whole or in part upon an abstract hypothetical question, but must base his opinion solely upon his own personal knowledge, observation, acquaintance, experience, etc., with the individual inquired of.—*Roberts v. Trawick,* 13 Ala. 68; *Burney v. Torrey,* 100 Ala. 157; *Boling v. Boling,* 8 Ala. 358.

Non-expert witnesses, to give an opinion as to insanity of a party, must first state the facts claimed to show or indicate an abnormal condition of the mind; but such witness may give an opinion that the person inquired of

was sane, by first merely denying generally the existence of any facts showing an abnormal or unnatural state of mind, and without specifying any of such facts. *Caddell v. State,* 129 Ala. 65; *Dominick v. Randolph,* 124 Ala. 557; *Parsons v. State,* 81 Ala. 577.

The hypothetical question propounded to an expert witness, should embrace substantially all the facts where there is no dispute as to the facts upon the question of insanity.—*Davis v. State,* 35 Ind. 496; s. c. 9 Am. Rep. 760; *Webb v. State,* 9 Texas App. 490; *State v. Baber,* 74 Mo. 292; 41 Am. Rep. 314; *Goodwin v. State,* 96 Ind. 554.

If the evidence is in conflict as to the facts tending to show insanity, the hypothetical question may and should properly embrace only the *facts* tending to support the particular theory of the respective party, and the opposing party, if desirable, on cross-examination of the witness, may propound questions to him embracing the facts which tend to support his theory.—*Grubb v. State,* 117 Ind. 277; *People v. Hill,* 116 Col. 562; *State v. Baber, supra.*

The hypothetical question to an expert witness should not contain matter as to which there is no evidence tending to support. However, technical accuracy is not required as to this. It is for the jury to scrutinize the evidence and to determine what part of the question is true or supported by the evidence and what is not, and the adverse party may ask for instructions, that the jury do not accept the facts as true, but that they should determine whether such facts were in evidence, and that they might disregard the opinion of the expert if not based on facts in evidence.—*Grand Lodge v. Wieting,* 168 Ill. 408; *Forsyth v. Doolittle,* 120 U. S. 76; *Goodwin v. State, supra.*

Expert witnesses may be cross-examined and their opinion obtained based on other states of facts, assumed by the party examining them to have been proven upon a hypothetical case; and they may be cross-examined on purely imaginary and abstract questions. Such questions are not only permissible in order to get the opinion of the expert witness upon all the possible theories

of the case,. but they are allowable also to test the value and accuracy of the opinion of the witness himself. *Clark v. State,* 12 Ohio, 483; 40 Am. Dec. 481; *People v. Sutton,* 73 Cal. 243.

The opinions of expert witnesses as to insanity are not conclusive upon the jury; they are to be weighed like other evidence. Such evidence is intended to aid the jury, and its value depends largely upon the intelligence, experience, honesty and impartiality of the witnesses and their opportunity of knowing the traits and habits of the person whose mind is under investigation. Its weight is solely a question for the jury; they may reject it all, though it is without conflict.—*McAllister v. State,* 17 Ala. 434; *Williams v. State,* 50 Ark. 511; *People v. Barberi,* 47 N. Y. Supp. 168.

Applying these rules of law to the many objections and exceptions relating to the evidence of the expert and non-expert witnesses, the only possible objections of any merit we find were those interposed to hypothetical questions propounded by the State to Dr. Wyman. Those questions hypothesized, along with facts the opinion of an expert, and, therefore, the opinion expressed by Dr. Wyman may have been predicated not upon the facts hypothesized but upon the opinion expressed by expert witnesses.

It was possibly an error in the court in refusing to allow the witness Clayton to answer whether or not he ever saw the defendant when he appeared to be in his right mind; but the error was cured by subsequently allowing the witness to answer this question, or to give his opinion as to the defendant's insanity.

The court very propely refused to allow the defendant to prove his insanity by reputation, notoriety or hearsay. Insanity cannot be proven in this manner, consequently there is nothing in exceptions 17, 18, 19, 20, 31, 32 and 33.—*Kimbrell v. State,* 130 Ala. 40, 44; 16 Am. & Eng. Ency. of Law (2 ed.) 612, and note 7.

There was no error in the court's refusal to lecture the solicitor for asking an improper question of the witness Martin, nor in declining to make an argument for

the defendant upon the impropriety of the question. The court, however, properly sustained the defendant's objection to the question; this was certainly all the defendant could ask, under the facts as shown by this bill of exceptions.—*Downey v. State,* 115 Ala. 108, 112.

The police officer was properly allowed to testify that the defendant "talked rationally." Witnesses may always be allowed to testify as to the appearance and emotions of other persons.—*Gardner v. State,* 96 Ala. 12; *Reeves v. State,* 96 Ala. 33; *Thornton v. State,* 113 Ala. 43.

There was manifest error in the trial court refusing to allow the defendant to ask the witness Jones on cross-examination the following question: "Did you say to defendant's brother, W. B. Parrish, this morning or yesterday, and in the hall in the court house, that all you had to say was that his brother, the defendant, was of unsound mind?" The ground of the State's objection and presumably the one on which the court justified its ruling and action was, that the question showed a violation of the rule by defendant's brother and the witness. The question did not show a violation of the rule, it merely called for an answer which might have shown its violation by the witness, which defendant had a right to show. And if shown it would have been discretionary with the court to allow the witness to testify at all. The witness having testified against the accused, he certainly had the right to lay the predicate to impeach him. The effect of the court's action was to allow the State to introduce this witness and to allow him to testify in its behalf and to refuse to allow the defendant to impeach him by showing a contradictory statement, because it would show that the witness had violated the rule in making the contradictory statement. The defendant had a right to show both facts if he could. Certainly the defendant should not lose the right to impeach the witness because he had violated the rule, or because the defendant's brother had violated the rule. If the defendant or his counsel had violated the rule, there would have been some ground for refusing him the right to impeach the witness, but certainly not where

the State's own witness and a third party are the violators,—1 Greenleaf on Evidence, § 432. It is true the question was not answered, and it is not made to appear what the answer would have been, except from the question itself. But this is not necessary to constitute reversible error, if the question is sufficiently definite to show that the answer would be *prima facie* relevant, and it indicates the nature of the answer. It is only when the question is so general that an answer cannot be said to be *prima facie* admissible, that a party is required to inform the court what is proposed to be proven, so that the court may see that the evidence he seeks to elicit is proper. The question in this case clearly showed that it was intended to elicit an answer admissible and relevant, as tending to impeach the evidence of the witness to whom it was propounded. This is as clearly shown by the question as if the answer had been stated to the court.—*Phoenix Ins. Co. v. Moog,* 78 Ala. 308; *Fincher's case,* 58 Ala. 215.

The objections to the testimony of the witness Austin were not well taken. The statements made by the defendant to this witness were shown to have been voluntary, consequently were admissible as a declaration or confession against the defendant, and were admissible also upon the question of sanity, or the condition of the mind of defendant.

The objections to the statements of the witness that the defendant "seemed all right," that "he talked rational," etc., were properly overruled. Such expressions were admissible under the rules we have announced, and for the further reason that they were admissible to show the appearance, emotions and condition of the mind of the defendant.—*Gardner v. State,* 96 Ala. 12; *Thornton v. State,* 113 Ala. 43.

Justice DOWDELL and the writer entertain the opinion that the court also erred in refusing to allow the defendant's counsel, on cross-examination of the witness Dr. McAdory, to ask him the question, the substance of which was, would he say that a man with *delirium tremens* could choose between right and wrong? Under

the rules of law and evidence as to proof of insanity by expert witnesses, this question, in our opinion, is allowable. The defendant was entitled to have the benefit of this question as to his sanity upon that hypothesis. There was evidence tending to show that he was in this condition at the time of the killing, and we think the question was properly propounded to an expert witness who is a physician, where the cause of insanity, as in this case, if it existed at all, was the result of alcoholism. The question, we think, was also permissible on cross-examination to test the qualification or competency of the witness to testify as an expert, and for the jury to consider in weighing his evidence as to what weight they would give it.—*Clarke v. State, supra.* However, the other members of the court do not concur in this view. The court further fell into error in making the remark, when he sustained the objection to this question, in the presence and hearing of the jury, "because *delirium tremens* of itself would not excuse a homicide even if the defendant could not choose between right and wrong." If the proposition of law announced by the court had been correct and sound, the question was proper for the reason stated above. But the remark of the court was further objectionable in that it does not announce a correct proposition of law when applied to the evidence in this case. While *delirium tremens* itself is not necessarily a complete defense, or does not wholly excuse a person who commits a crime while in that condition, yet it may palliate or extenuate the crime and punishment, if the disease, drunkenness, or *delirium tremens,* has gone to such an extent as to deprive the person of the capacity to have entertained the intent necessary to constitute murder. Hence, voluntary drunkenness, though not carried to the extent of *delirium tremens,* may palliate a crime, if a necessary element of the crime is specific intent. In order to constitute murder in the first degree willfullness, premeditation and deliberation must concur with malice, and if drunkennes or *delirium tremens* has gone to such an extent as to paralyze the mental faculties, and to render the accused incapable of forming a design, which is a necessary ingredient of the crime,

it would be a pertinent inquiry for the jury in determining the decree of the homicide and of the punishment to be inflicted. And there being some evidence that the accused was suffering from *delirium tremens* at the time, he had a right to have the jury pass upon its credibility and sufficiency, and as to whether it was sufficient to prevent his being capable of forming an intent and of entertaining the necessary malice or intent to constitute murder.—*Whitten v. State,* 115 Ala. 72; *Chatham v. State,* 92 Ala. 47; *King v. State,* 90 Ala. 612.

Furthermore, on the tendencies of the evidence in this case, as shown by the record, it cannot be affirmed as a matter of law that *delirium tremens,* even if induced by voluntary drunkenness, would not support the defendant's plea of not guilty by reason of insanity. A person suffering under or afflicted with *delirium tremens,* for the time being, may be as absolutely insane as an idiot or a maniac. Webster defines *delirium tremens,* as "a violent delirium induced by the excessive and prolonged use of intoxicating liquors" and gives as its synonyms, "insanity, frenzy, madness, derangement." Judge Somerville in *Gunter's case* (83 Ala. 108), speaking of the definition of the word "insanity," says that "It embraces every species of mental unsoundness, whatever may be its source or cause, and includes not only that derangement of the mind produced by disease of the brain, but is recognized by law as a defense to crime which is the sole product of it, but it also embraces * * * * that condition of subverted reason which may be produced by intoxication." He further says that "Lord Coke in defining the four classes of persons *non compos,* embraces not only idiots and lunatics, and those who have lost their mind and memory by the visitation of God, but him also who has become such by his own act as *a drunkard.*" It is true he also says, "that there is a species of insanity, or mental unsoundness manifested by a temporary depression or abberation of the mind, which sometimes accompanies or follows intoxication, and is often accompanied by delusions, hallucinations and illusions. This state of transient departure

from reason is sometimes called a fit of mania, just as anger itself is often said to be a short madness, and these delusions are said to be insane delusions. But they are not such insanity as confers legal irresponsibility for crime." He further says: "We do not mean to intimate that the disease of insanity, such as may exculpate from criminal responsibility, may not result from habits of intoxication in the form of *delirium tremens, mania a potu,* or other like chronic disorders produced from an excessive and protracted use of alcoholic stimulants, which are not the immediate but the remote or secondary consequences of such indulgence."

There was no error in the court's refusal to exclude from the jury the remarks of the solicitor in his closing argument to the jury in which he said, "If he had been insane as they say, why had they not sent him to the asylum?" and the further remark, "Is there any evidence before you that any one had complained of his insanity?"

As to the objections and exceptions going to the rulings of the court upon charges, we have carefully examined the general charge of the court which was in wrting, and also the given and refused charges. In them, we find no error of which the defendant can complain. The general charge, which was in writing, was a very clear and accurate exposition of the law as applicable to this case. There were fifty-five of the defendant's requested charges refused, as to each of which error is assigned. A great number of these are palpably erroneous and are not insisted upon. Quite a number of others announce sound propositions of law when abstractly considered. But it would be a needless consumption of time to discuss each of these separately. We will simply announce a few principles of law and by the application of them it will readily be seen that each of them was properly refused.

SOMERVILLE, J., in the majority opinion in *Parsons v. State,* (81 Ala. 596), said: "The inquiries to be submitted to the jury, then, in every criminal trial where the defense of insanity is interposed, are these: First,

Was the defendant at the time of the commission of the alleged crime, as a matter of fact, afflicted with a *disease of the mind,* so as to be either idiotic, or otherwise insane? Second, If such be the case, did he know right from wrong as applied to the particular act in question? If he did not have such knowledge, he is not legally resposible. Third, If he did have such knowledge, he may nevertheless not be legally responsible if the two following conditions concur: (1). If by reason of the duress of such mental disease, he had so far lost the *power to choose* between the right and wrong, and to avoid doing the act in question, as that his free agency was at the time destroyed. (2). And if, at the same time, the alleged crime was so connected with such mental disease, in the relation of cause and effect, as to have been the product of it *solely.*"

The defense of insanity under our statute must be specially pleaded, and evidence thereof is not admissible under the general issue. The purpose of the statute has been said to be to separate as far as possible the two defenses of "not guilty" and "not guilty by reason of insanity," and to have the proof directed to each of the two defenses, and the verdict to respond to each of such defenses.—*Perry v. State,* 87 Ala. 30; *Maxwell v. State,* 89 Ala. 150; *Ward v. State,* 96 Ala. 100; *Martin's case,* 119 Ala. 1.

In the trial of a homicide case where the plea of "not guilty" and the statutory plea of "not guilty by reason of insanity" are both interposed, the burden of proof as to the first plea, is upon the State to satisfy the jury beyond a reasonable doubt of the guilt of the defendant; but as to the second plea, the burden of proof is upon the defendant to establish the plea of "not guilty by reason of insanity" to the reasonable satisfaction of the jury by a preponderance of the evidence, and a reasonable doubt is not sufficient to acquit the defendant under this plea. Hence, it will be seen that upon these two pleas and issues the burden of proof in the one case is upon the State, and in the other, upon the defendant. The weight and sufficiency of the evidence as to the one

plea, is that the State must satisfy the jury beyond a reasonable doubt; whereas, as to the other, the defendant must reasonably satisfy the jury by a preponderance of the evidence. Consequently, charges which are applicable and proper in the trial of one of these issues, would not be proper or applicable as to the other issue. So, too, the charges should be appropriate and should be limited in their operation and effect to the particular plea or issue to which they are directed. Though charges be correct and proper as to one issue if not as to the other, they should be refused.

Hence, charges in homicide cases, where these two pleas are interposed unless correct as to both issues should be limited to the issue as to which they are appropriate, and if they should have a tendency to mislead or to confuse the jury as to which of the two issues they were intended, when not applicable to both, they should be refused.—*Parsons' case, supra; Maxwell's case, supra.*

Many of the charges would have, perhaps, been proper in the trial of a homicide had the only issue been that of "not guilty," but these charges were clearly not proper or appropriate as to the statutory plea.

A party has no right to have charges repeated to the jury. Hence, it is not error to refuse charges which have already been given.

Trial courts are not required to give every charge to the jury which is shown to be technically correct. Charges should be gauged and interpreted in the light of the evidence, and if they ignore parts of the evidence, or single out particular facts or theories, and request verdicts based alone upon such facts or theories, they may be refused.—*Crawford's case,* 112 Ala. 1.

The general affirmative charge is of doubtful propriety in criminal cases. Yet this court has, time and time again, held that where there is no evidence upon which a verdict of acquittal could be based, or where all the facts and evidence point to guilt, and where the evidence is uncontroverted and is of a conclusive character, the general affirmative charge may be given against the defendant in criminal cases.—*Taylor v. State,* 121 Ala. 24; *Jones v. State,* 96 Ala. 56.

As to the plea of "not guilty" in this case, the evidence was not in conflict, and there was no dispute as to any material part thereof, and under all the evidence which was undisputed, the jury could not have properly rendered a verdict for the defendant on it. Hence, the State would have been entitled to the affirmative charge with hypothesis. Consequently, it does affirmatively appear from the record, that if there was any error in refusing any charge under this plea, it was error without injury, if it was not applicable or appropriate under the other plea.

It is true that the doctrine of error without injury does not apply, unless it affirmative appears that no injury was or could be done the defendant by reason of such error; but as pointed out above, when it is considered under the undisputed evidence in this case, which was clear and without conflict, that the verdict could not have been for defendant on his plea of "not guilty," of course it affirmatively appears that the refusal of charges was without injury which predicated his acquittal under that issue. Yet, if it could be said, that some of the charges requested and refused, stated correct propositions of law, and would be applicable where the evidence was in conflict, and where the jury might or would be justified in finding for or against the defendant, of course, they would not be applicable or proper in a case like this, where the general affirmative charge could properly have been given with hypothesis. Applying these rules of law to charges which were refused, we find no error of which the defendant can complain.

What we have said will be a sufficient guide upon another trial without a review of other questions presented by the record. For the errors pointed out, the judgment is reversed and the cause is remanded.

Reversed and remanded.